## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JARED MICAH PEARSON,

                Petitioner,                  Case No. 12-14816
                                            HON. TERRENCE G. BERG

     v.

KENNETH ROMANOWSKI,

                Respondent.

_____/

## OPINION AND ORDER DISMISSING
## THE PETITION FOR WRIT OF HABEAS CORPUS;
## DENYING A CERTIFICATE OF APPEALABILITY; AND
## DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Jared Micah Pearson ("Petitioner"), a state-prisoner presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for voluntary manslaughter, MCL 750.321; and for being a third felony habitual offender, MCL 769.11. For the reasons stated below, the petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

### I.     FACTUAL BACKGROUND

Petitioner was originally charged with second-degree murder, carrying a concealed weapon, and being a third felony habitual offender. Following a jury trial in the Kent County Circuit Court, Petitioner was found: (1) guilty of the lesser included offense of voluntary manslaughter on the second-degree murder count and (2) not guilty of carrying a concealed weapon.

This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In July 2007, defendant appeared at the home of Charles Lopez and the two engaged in conversation outside the home. Both had apparently been drinking. Lopez became angry when defendant began flirting with his girlfriend and an altercation ensued. At some point, a knife was produced and defendant fatally stabbed Lopez in the neck. Defendant fled the scene, but was arrested a short time later. He was charged with second degree murder and carrying a concealed weapon.

*People v. Pearson,* No. 284708, *1 (Mich. Ct. App. Sept. 24, 2009).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 485 Mich. 1082, 777 N.W.2d 189 (2010); *reconsideration den.* 486 Mich. 904, 780 N.W.2d 818 (2010).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Pearson,* No. 07-09567-FC (Kent Cnty. Circuit Court, Dec. 27, 2010). The Michigan appellate courts subsequently denied Petitioner leave to appeal. *People v. Pearson,* No. 305752 (Mich. Ct. App. Nov. 22, 2011); *lv. den.* 491 Mich. 942, 815 N.W.2d 452 (2012).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. Petitioner Jared Pearson was denied a fair trial by the prosecutor's improper and repeated use of irrelevant evidence and argument that [Petitioner] did not call 911 and did not tell the police that he acted in self-defense, thus improperly shifting the burden of proof on self-defense and using [Petitioner's] exercise of his rights to silence and to a lawyer as substantive evidence of guilt.

II. The trial judge committed plain error and denied [Petitioner] his rights to present a defense, to due process, and to a fair trial by giving

2

confusing instructions stating that self-defense was a valid defense to second-degree murder but failing to clarify that self-defense also applied to voluntary manslaughter. And trial counsel was ineffective by expressing satisfaction with the instructions.

III. Petitioner Jared Pearson was denied his right to present a complete defense by trial counsel's ineffectiveness. Trial counsel failed to fully question [Petitioner] regarding Sergeant Postma's testimony that [Petitioner] suddenly blurted out, "I'm as guilty as a bitch." [Petitioner's] testimony would have shown that [Petitioner] stated, "ain't that a bitch, I'm guilty," in response to Postma's accusation of guilt. The prosecution used Postma's uncontroverted testimony arguing that [Petitioner's] own words tell you that he did not have the required mind state for lawful self-defense.

IV. Petitioner was denied his right to the effective assistance of appellate counsel when appellate counsel failed to investigate and raise on direct appeal a claim that trial counsel was ineffective for failing to fully question Pearson regarding an alleged excited utterance.

(Dkt. 1, Pet.).

## II.   STANDARD OF REVIEW

The federal statute governing habeas, 28 U.S.C. § 2254(d), as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the

following standard of review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was

4

unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).
Furthermore, pursuant to § 2254(d), "a habeas court must determine what
arguments or theories supported or...could have supported, the state court's
decision; and then it must ask whether it is possible fairminded jurists could
disagree that those arguments or theories are inconsistent with the holding in a
prior decision" of the Supreme Court.  *Id.*

     "[I]f this standard is difficult to meet, that is because it was meant to be."
*Harrington,* 131 S.Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the
AEDPA, does not completely bar federal courts from relitigating claims that have
previously been rejected in the state courts, it preserves the authority for a federal
court to grant habeas relief only "in cases where there is no possibility fairminded
jurists could disagree that the state court's decision conflicts with" the Supreme
Court's precedents.  *Id.*  Indeed, "Section 2254(d) reflects the view that habeas
corpus is a 'guard against extreme malfunctions in the state criminal justice
systems,' not a substitute for ordinary error correction through appeal."  *Id.* (citing
*Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in
judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent
with the presumption that state courts know and follow the law."  *Woodford,* 537
U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state
prisoner is required to show that the state court's rejection of his claim "was so
lacking in justification that there was an error well understood and comprehended
in existing law beyond any possibility for fairminded disagreement."  *Harrington,*

131 S. Ct. at 786–87.  Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one."  *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III.   DISCUSSION

### A.   The Motion for an Evidentiary Hearing.

Petitioner has moved for an evidentiary hearing on his ineffective assistance of counsel claims.

When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Id.*  If the record refutes the habeas Petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.  *Id.*  Stated differently, a habeas Petitioner is not entitled to an evidentiary hearing on his claims if they lack merit.  *See Stanford v. Parker,* 266 F.3d 442, 459–60 (6th Cir. 2001).  Because the record is sufficient to permit the Court to evaluate Petitioner's claims and determine that they lack merit, as will be discussed in greater detail below, Petitioner is not entitled to an evidentiary hearing.

6

Accordingly, Petitioner's motion for an evidentiary hearing (Dkt. 15) is DENIED.

**B.    Claim 1 – Prosecutorial Misconduct.**

Petitioner first contends that he was deprived of a fair trial by prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643–45. The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Likewise, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial

7

misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. ---, ---, 132 S.Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S.Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

### 1.    Introduction of Irrelevant Evidence

Petitioner begins by asserting that the prosecutor committed misconduct by introducing irrelevant evidence against him at his trial. The Sixth Circuit has noted that there are no Supreme Court cases which support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 F. App'x 591, 594 (6th Cir. 2005). Therefore, the mere fact that the prosecutor attempted to elicit irrelevant evidence at Petitioner's trial would not entitle him to habeas relief. *Id.*

### 2.    Alleged Violations of Fifth Amendment (Pre-Arrest)

Petitioner further contends that the prosecutor penalized him for exercising his Fifth Amendment right to remain silent by asking questions or commenting on Petitioner's failure to call 911 or to inform the police at the time of his arrest that he

had acted in self-defense.  Petitioner is not entitled to habeas relief on this portion of his claim.

The prosecutor's references during closing argument to Petitioner's failure to call 911 after the stabbing are references to Petitioner's pre-arrest silence. However, it appears from the record that the prosecutor brought up Petitioner's failure to call 911 after the stabbing in order to impeach Petitioner's claim that he had killed the victim in self-defense.[1]  The Supreme Court has held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process because the "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial."  *Jenkins v. Anderson*, 447 U.S. 231, 238–39 (1980).  In the present case, Petitioner took the stand and testified that he stabbed the victim in self-defense. References to Petitioner's pre-arrest silence were thereafter permissible under *Jenkins* to impeach his credibility.

Moreover, even if the Court were to construe Petitioner's pre-arrest silence as having been offered as substantive evidence of Petitioner's guilt, such a use was not prohibited by "clearly established federal law" at the time of Petitioner's trial. Although the Sixth Circuit has held that the use of a defendant's pre-arrest silence

---

[1] When viewed in the overall context of the prosecutor's arguments, the comments about Petitioner's failure to call 911 appear to have been used to cast doubt on Petitioner's claim of self-defense and not as substantive evidence of Petitioner's guilt.  *See Seymour v. Walker,* 224 F.3d 542, 560 (6th Cir. 2000).

9

as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination, *see Combs v. Coyle,* 205 F. 3d 269, 283 (6th Cir. 2000), in doing so it acknowledged that the Supreme Court in *Jenkins* never addressed the issue of whether the use of pre-arrest silence as substantive evidence violated the Fifth Amendment. *Id.* at 281. The Sixth Circuit further noted that the federal circuits that had considered the issue were "equally divided" over whether a defendant's pre-arrest silence could be used as substantive evidence of guilt. *Id.* at 282 (collecting cases). Likewise, another judge in this district has held that a criminal defendant's pre-arrest silence is not afforded "conclusive protection." *See Martin v. Jabe,* 747 F. Supp. 1227, 1233 (E.D. Mich. 1989) (Duggan, J.). Further, a habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *See Mitzel v. Tate,* 267 F.3d 524, 530–31 (6th Cir. 2001). A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* Sixth Circuit precedent thus does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* 132 S.Ct. at 2155. The Sixth Circuit has also noted that the decision in *Combs* is not controlling on a case like Petitioner's because *Combs* is a pre-AEDPA decision and was therefore decided under a *de novo*

10

standard of review, as opposed to the more deferential standard of review enunciated by the AEDPA.  *See Jones v. Trombley*, 307 F. App'x 931, 934, n.1 (6th Cir. 2009).

In the present case, at least at the time of Petitioner's trial, the United States Supreme Court had not spoken dispositively on the issue of whether the use of a criminal defendant's pre-arrest silence as substantive evidence violates the Fifth or Fourteenth Amendments.[2]  The Michigan Court of Appeals did not directly analyze this question, finding that the one statement made regarding Defendant's *pre*-arrest silence had been duly objected-to and the objection sustained, thereby mitigating any potential prejudice.  Regardless, at the time of the Michigan Court of Appeals' decision, clearly established Supreme Court precedent on the issue of using pre-arrest silence as substantive evidence of guilt did not exist.  *See Bond v. McQuiggan,* 506 F. App'x 493, 498 (6th Cir. 2012); *Jones,* 307 F. App'x at 934; *Mitchell v. Lafler,* 118 F. App'x 24, 26–27 (6th Cir. 2004)[3]  Even if the Michigan Court of Appeals had found the reference to Petitioner's pre-arrest silence to be permissible as direct evidence of guilt, the fact that the Supreme Court had not yet addressed this issue, coupled with the then-existing "disagreement and confusion" among the federal courts, would preclude this Court from finding that the Michigan

---

[2] The Supreme Court indicated in *Jenkins* that their decision did not consider whether or under what circumstances pre-arrest silence itself may be protected by the Fifth Amendment.  *Jenkins,* 447 U.S. at 236, n.2.

[3] Further, the Court notes that the Supreme Court recently held, in *Salinas v. Texas,* 133 S.Ct. 2174 (2013), that the use of pre-arrest silence as direct evidence of guilt is *not* a violation of a Defendant's Fifth Amendment rights.

11

Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law.

Consequently, although in this case the evidence of Petitioner's failure to call 911 or to inform the police at the time of his arrest that he had acted in self-defense was offered as impeachment, and was not offered as substantive evidence of guilt, it is clear that the decision of the Michigan Court of Appeals was not contrary to or an unreasonable application of clearly established federal law.

### 3.    Alleged Violations of Fifth Amendment (Post-Arrest)

Petitioner next claims that the prosecutor improperly questioned Sergeant Postma about Petitioner's post-arrest, pre-*Miranda* silence. Sergeant Postma testified that after Petitioner was arrested, but before his *Miranda* rights were read to him, Sergeant Postma asked Petitioner if he was willing to talk, and Petitioner responded, "about what?" Postma replied, "About what happened tonight." Petitioner responded "I don't know what happened." Postma then read Petitioner his *Miranda* rights and Petitioner asked for an attorney. (Feb. 8, 2008 Tr., pp. 140–42).

In the absence of any indication that a criminal defendant had received his *Miranda* warnings, the use of post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir,* 455 U.S. 603, 606–07 (1982). In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes, where the

defendant testified at trial that he stabbed the victim in self-defense and that the stabbing was accidental. *Id.* Similarly, the use of Petitioner's post-arrest, pre-*Miranda* statement to impeach his self-defense claim did not violate his due process rights.

Moreover, to the extent that the prosecutor used Petitioner's pre-*Miranda* statements as substantive evidence, he would still not be entitled to habeas relief. The constitutionality of using a criminal defendant's post-arrest, pre-*Miranda* silence as substantive evidence has yet to be addressed by the United States Supreme Court and remains the subject of disagreement among the federal circuit courts.[4] Therefore, the Michigan Court of Appeals' decision to uphold Petitioner's conviction despite any use of his post-arrest, pre-*Miranda* silence as substantive evidence was not contrary to or unreasonable application of clearly established federal law, and thus it does not warrant federal habeas relief. *See Jones v. Trombley,* 307 F. App'x at 933–34; *Narlock v. Hofbauer,* 118 F. App'x 34, 35 (6th Cir. 2004).

Petitioner further appears to argue that the prosecutor elicited evidence in violation of Petitioner's Fifth Amendment rights when Sergeant Postma testified

---

[4] A number of circuits have held that it is permissible for a prosecutor to use a criminal defendant's silence after he or she is arrested, but before *Miranda* warnings have been given, as substantive evidence; other circuits have refused to allow the use of such evidence. *Compare United States v. Frazier,* 408 F.3d 1102, 1111 (8th Cir. 2005) (holding that when no governmental action induced post-arrest, pre-*Miranda* silence, it could be introduced as evidence of guilt), *United States v. Rivera,* 944 F.2d 1563, 1568 (11th Cir. 1991) (prosecution may comment on a defendant's post-arrest silence prior to *Miranda* warnings being given), and *United States v. Love,* 767 F.2d 1052, 1063 (4th Cir. 1985) (same); *with United States v. Moore,* 104 F.3d 377, 385 (D.C. Cir. 1997) (introduction of defendant's pre-*Miranda* custodial silence violates the Fifth Amendment), and *United States v. Whitehead* 200 F.3d 634, 638 (9th Cir. 2000) (same).

13

that while still at the crime scene and after having been advised of his *Miranda* rights, Petitioner suddenly blurted out "He didn't get a chance to cut me, I'm as guilty as a bitch." (Feb. 8, 2008 Tr., pp. 141–42). Petitioner also points to a statement that he made to Officer Jonathan Peters during booking in which he informed the officer that he didn't mean to kill the victim. (*Id.,* p. 121).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence after he or she has been given *Miranda* warnings to impeach exculpatory testimony given by the defendant at trial. *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976). In the present case though, Petitioner appears to have acted voluntarily and spontaneously when he uttered that he was "as guilty as a bitch" and later when he stated that he did not mean to kill the victim. There is no indication that Sergeant Postma or Officer Peters were interrogating Petitioner at the time that he made these statements. "[A] defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of the statements, defendant has not remained silent at all." *Anderson v. Charles,* 447 U.S. 404, 408 (1980). Because Petitioner chose to voluntarily utter these statements, the prosecutor's questions to Sergeant Postma and to Officer Peters concerning these remarks did not impermissibly comment upon Petitioner's post-arrest silence, but were instead proper impeachment of Petitioner's self-defense claim under *Anderson*. *See Dye v. Hofbauer,* 197 F. App'x 378, 386 (6th Cir. 2006).

Next, to the extent that the prosecutor (1) attempted to question various witnesses about Petitioner's invocation of his right to remain silent or (2) attempted to comment on this silence, the judge sustained all of defense counsel's objections to these remarks. Because the trial judge sustained defense counsel's objections to these questions, this alleged prosecutorial misconduct did not deprive Petitioner of a fair trial. *See U.S. v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003) (citing *United States v. Bess,* 593 F.2d 749, 757 (6th Cir. 1979)).

**4.    Shifting Burden of Proof as to Self Defense**

Petitioner further claims that the prosecutor shifted the burden of proof to him to prove that he acted in self-defense by bringing up in her closing argument that Petitioner had failed to call 911 or otherwise inform the police that he had acted in self-defense. This argument is also without merit.

The trial court instructed the jury that Petitioner was presumed innocent and that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt. The trial court further advised the jurors that the prosecutor had to prove beyond a reasonable doubt that Petitioner did not act in self-defense. (Feb. 12, 2008 Tr., pp. 79–80, 90). The prosecution's argument did not deprive Petitioner of a fair trial because any prejudice arising from the comments was cured by the trial court's instructions as to the burden of proof. *See Scott v. Elo,* 302 F.3d 598, 603–04 (6th Cir. 2002).

Petitioner therefore is not entitled to habeas relief on his first claim.

15

C.      **Claim 2 – Improper Jury Instruction.**

Petitioner next claims that the trial court gave a confusing jury instruction,

which indicated that self-defense was a valid defense to second-degree murder but

failed to explain that self-defense also applied to the lesser included offense of

voluntary manslaughter.[5]

The Michigan Court of Appeals rejected this claim:

The trial court carefully explained the applicability of self-defense, underscoring the point that self-defense applied to the second-degree murder count, and not to the CCW count.  The trial court's instructions clearly provided that the jury had three options with respect to the second-degree murder count: "You can either find the defendant not guilty, you can find the defendant guilty of second-degree murder, or you can find the defendant guilty of voluntary manslaughter."  The trial court then explicitly stated, "self-defense is not a defense to Count Two, carrying a concealed weapon, but it is a defense to Count One, where second-degree murder is charged and voluntary manslaughter is charged as a possible lesser offense."  The above sufficiently expresses that self-defense is applicable to the entirety of count one, explicitly including voluntary manslaughter as a lesser offense.  Additionally, there is no indication that the jury was confused regarding the trial court's instructions; rather, the jury's notes to the trial court suggest that they carefully scrutinized the evidence to determine, which of the available options for count one applied to the instant case.

While the trial court could have used more precise language in explaining that self-defense could excuse manslaughter, "even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried."  *People v. Martin*, 271 Mich. App. 280, 337-338; 721 N.W.2d 815 (2006).  Examining the jury instructions as a

---

[5] Respondent contends that Petitioner's second claim is procedurally defaulted because Petitioner's trial counsel expressed satisfaction with the instructions as given.  Petitioner claims that his trial counsel was ineffective for failing to object to the jury instructions as given.  Ineffective assistance of counsel may establish cause for procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, the Court will address the merits of the claim directly.  *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

16

whole, we conclude that the trial court's instructions fairly presented the issues to be tried and sufficiently protected defendant's rights. *People v. Aldrich*, 246 Mich. App. 101, 124; 631 N.W.2d 67 (2001).

*Pearson,* No. 284708, Slip. Op. at *2–3.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the challenged instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154–55 (1977). The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Here, Petitioner has failed to show that the jury instructions, when viewed in their entirety, did not adequately advise the jury that self-defense was a defense to

17

the lesser included offense of voluntary manslaughter as well as to the charged offense of second-degree murder.  Although the judge's initial instruction on the law of self-defense indicated that the defense applied to the charge of second-degree murder without mentioning the manslaughter charge, the judge subsequently and explicitly stated that self-defense was not a defense to the charge of carrying a concealed weapon but was a defense to count one, where second-degree murder was charged and where voluntary manslaughter was charged as a possible lesser offense.  (Feb. 12, 2008 Tr., p. 94).  This instruction adequately informed the jurors that self-defense was a defense to the lesser included offense of voluntary manslaughter.

Petitioner is not entitled to habeas relief on his second claim.

**D.   Claims 2, 3 and 4 – Ineffective Assistance of Counsel.**

In a part of his second claim and in his third claim, Petitioner contends that he was deprived of the effective assistance of trial counsel.  In his fourth claim, Petitioner alleges that he was deprived of the effective assistance of appellate counsel.  The Court will consolidate its discussion of Petitioner's ineffective assistance of counsel claims for the sake of clarity.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687

18

(1984).  In so doing, the defendant must overcome a strong presumption that
counsel's behavior lies within the wide range of reasonable professional assistance.
*Id*.  In other words, Petitioner must overcome the presumption that, under the
circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466
U.S. at 689.  Second, the defendant must show that such performance prejudiced his
defense.  *Id*.  To demonstrate prejudice, the defendant must show that "there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different."  *Strickland,* 466 U.S. at 694.  "*Strickland*'s
test for prejudice is a demanding one.  'The likelihood of a different result must be
substantial, not just conceivable.'"  *Storey v. Vasbinder,* 657 F.3d 372, 379 (6th Cir.
2011) (quoting *Harrington v. Richter,* 131 S.Ct. at 792).

    *Strickland* places the burden on the defendant claiming ineffective assistance
of counsel, not the state, to show a reasonable probability that the result of the
proceeding would have been different, but for counsel's allegedly deficient
performance.  *See Wong v. Belmontes,* 130 S.Ct. 383, 390–91 (2009).  The *Strickland*
standard applies as well to claims of ineffective assistance of appellate counsel.  *See
Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

    More importantly, on habeas review, "the question 'is not whether a federal
court believes the state court's determination' under the *Strickland* standard 'was
incorrect but whether that determination was unreasonable—a substantially higher
threshold.'"  *Knowles v. Mirzayance,* 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v.
Landrigan,* 550 U.S. at 473).  "The pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S.Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S.Ct. at 1420 (citing *Yarborough*, 541 U.S. at 664).  Pursuant to the standard set forth in § 2254(d)(1), a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas Petitioner.  *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S.Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task."  *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard:

> "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter*, 131 S.Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago and a direct appeal that concluded almost four years ago "is precisely what *Strickland* and AEDPA seek to prevent."  *Id.* at 789.

20

### 1.    Trial Counsel – Failure to Object to Jury Instruction

As part of his second claim, Petitioner contends that his trial counsel was ineffective for failing to object to the trial judge's allegedly inadequate jury instruction on the affirmative defense of self-defense. This Court has already concluded that the jury instructions in their entirety adequately informed the jurors that self-defense was a defense to the lesser included offense of voluntary manslaughter as well as to the charged offense of second-degree murder. Because the instructions on self-defense were adequate as given, counsel's failure to object to the instruction was not objectively unreasonable, and Petitioner cannot show that a different instruction would likely have changed the outcome of his trial so as to entitle him to habeas relief on his claim. *See Jacobs v. Sherman,* 301 F. App'x. 463, 466–67 (6th Cir. 2008).

### 2.    Trial Counsel – Direct Examination

In his third claim, Petitioner argues that his trial counsel was ineffective for failing to fully question Petitioner during his direct examination concerning the exact nature of the excited utterance that Petitioner made to Sergeant Postma.[6]

---

[6] Respondent contends that Petitioner's claim is procedurally defaulted because he raised it only for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise the claim in his appeal of right. This Court notes "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed,* 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991). The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing

21

Sergeant Postma testified that while Petitioner was being swabbed by a forensic officer for blood evidence at the crime scene, Petitioner blurted out "I'm as guilty as a bitch." Petitioner claims that Sergeant Postma asked him at the crime scene whether he got a cut on his finger, to which Petitioner responded that the victim did not get a chance to cut him. According to Petitioner, Postma then stated, "Oh, yeah, he's guilty alright," to which Petitioner then responded, "Ain't that a bitch, I'm guilty." Petitioner claims that he had spoken with trial counsel at the jail prior to trial and agreed that Sergeant Postma's claim that Petitioner had stated that he was "guilty as a bitch" needed to be rebutted. Although counsel asked Petitioner at trial on re-direct examination about the "cut me" statement, he did not specifically ask Petitioner to clarify the statement about being "guilty as a bitch."

Petitioner is not entitled to habeas relief on this claim. Petitioner has failed to offer any compelling argument that his statement, "Ain't that a bitch, I'm guilty" was any less inculpatory than the statement that Sergeant Postma claims that he made, namely, "I'm as guilty as a bitch." Either statement could plausibly be considered by the jury as an admission of guilt by Petitioner. Counsel's decision not to challenge Postma over this minor inconsistency was not ineffective assistance.

---

entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3), nor did they mention the Petitioner's failure to raise this claim on his direct appeal as their rationale for rejecting his post-conviction claim. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the Petitioner's claims. *Id*. The trial court rejected Petitioner's third claim on the merits without mentioning M.C.R. 6.508(D)(3) or Petitioner's failure to raise the claim on his direct appeal. Because the last reasoned state court decision rejected Petitioner's third claim on the merits, this claim is not procedurally defaulted. *Id*. at 289, 292.

*See Campbell v. United States,* 364 F.3d 727, 735 (6th Cir. 2004). Trial counsel's alleged deficiency in failing to ask Petitioner a question on direct or re-direct examination to rebut the "I'm guilty as a bitch" statement did not prejudice Petitioner, thus, he has failed to show that he was deprived of the effective assistance of trial counsel. *See e.g. Chandler v. Jones,* 813 F.2d 773, 782 (6th Cir. 1987).

Moreover, the state court previously rejected this exact argument on the merits in its ruling on Petitioner's motion for relief from judgment (Dkt. 13, Ex. 23, Kent Cnty. Cir. Ct. Order, ¶ 9). And, as the Supreme Court reiterated very recently, "where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Burt v. Titlow*, Case No. 12-414, Slip. Op. at *5–6, 571 U. S. --- (Nov. 5, 2013) (quoting *Stone* v. *Powell*, 428 U. S. 465, 494, n.35 (1976) (internal quotation marks omitted)). The state court's conclusion that counsel's decision did not amount to ineffective assistance was well supported and reasonable.

### 3. Appellate Counsel

In his fourth claim, Petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal a claim that trial counsel was

23

ineffective for failing to fully question Petitioner about his excited utterance to Sergeant Postma.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). This Court has already determined that Petitioner's third claim—regarding trial counsel's questioning of Sergeant Postma—is without merit. Therefore, appellate counsel was not ineffective in failing to raise this ground on Petitioner's direct appeal.

Petitioner is not entitled to habeas relief on any of his claims of ineffective assistance of counsel.

## IV. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists

24

could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  When a district court rejects a habeas Petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.

The Court will therefore deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong.  *See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).  Further, if Petitioner elects to appeal this decision, this Court concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous.  *See* Fed. R. App. P. 24(a).

## V.    CONCLUSION & ORDER

Based upon the foregoing, the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

Further, the motion for an evidentiary hearing (Dkt. 15) is **DENIED**.

Finally, Petitioner is **DENIED** a certificate of appealability, and **DENIED** leave to appeal in *forma pauperis.*

**SO ORDERED.**

Dated:  December 23, 2013                    s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE

25

**Certificate of Service**

I hereby certify that this Order was electronically submitted on December 23, 2013, using the CM/ECF system; a copy of this Order was also mailed to 440724 Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, Michigan 49221, addressed to Petitioner's attention.

s/A. Chubb
Case Manager